IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BARBARA HENRY,**  Case 1:15 CV 523

    Plaintiff,

    v.  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.  MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Barbara Henry ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to partially deny supplemental security income ("SSI") and disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 14). For the reasons stated below, the Commissioner's decision is AFFIRMED.

### PROCEDURAL BACKGROUND

Plaintiff filed for benefits in May 2010, asserting disability as of April 2007 due to heart attack, high blood pressure, diabetes, breast cancer, chronic obstructive pulmonary disease ("COPD"), and carpel tunnel syndrome. (Tr. 111). The claim was denied initially and upon reconsideration. (Tr. 119, 130). An administrative law judge ("ALJ") held a hearing in December 2011, at which Plaintiff amended her onset date to March 6, 2008. (Tr. 71, 76). The ALJ denied the claim, but the Appeals Council vacated the decision and remanded the case. (Tr. 152, 159-60). In August 2013, an ALJ held a second hearing during which Plaintiff, represented by

counsel, and a vocational expert ("VE") testified. (Tr. 30-31). Following the hearing, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of May 29, 2013, but not before. (Tr. 22). In January 2015, the Appeals Council denied Plaintiff's request for review of the unfavorable portion, making the determination final and appealable to this Court. (Tr. 1). Plaintiff filed the instant action on March 18, 2015. (Doc. 1).

## FACTUAL BACKGROUND

Plaintiff was born on October 30, 1956. (Tr. 340). She was 51 years old in March 2008, her amended alleged onset date, and 56 years old on May 29, 2013, the date the ALJ found her disabled. (Tr. 340). She graduated from high school and previously worked as a cleaner from 2002 until 2008. (Tr. 63, 353).

<u>Medical Evidence</u>

In April 2007, Plaintiff was admitted to the hospital for four days with complaints of chest pressure and tightness in both arms. (Tr. 412). Upon discharge, her diagnoses included acute anterior wall infarction, tobacco abuse, asthma, hypertension, history of carcinoma of the breast, hypomagnesemia, and hypokalemia. *Id.* Plaintiff underwent a heart catheterization which revealed severe right coronary artery disease and mild mid-inferior wall hypokinesis with overall normal left ventricular ejection fraction. (Tr. 454). She underwent a successful PTCA/stent deployment to her right coronary artery. (Tr. 455).

Plaintiff complained of chest pain in April 2008, but a cardiac stress test revealed no abnormalities with a left ventricle ejection fraction of 64% and chest x-rays showed no evidence of acute cardiopulmonary disease. (Tr. 467, 469, 470). Additionally, an x-ray of Plaintiff's right hip revealed mild osteoarthritis. (Tr. 471).

Plaintiff was admitted to the hospital for one day in October 2008 due to complaints of chest pain. (Tr. 473). Cardiac tests revealed a normal left ventricle with mild concentric left ventricular hypertrophy, normal ventricular systolic functioning, and an estimated ejection fraction of approximately 65%. (Tr. 497).

In August 2010, x-rays of Plaintiff's knees revealed spurring, but preserved joint spaces; and no joint effusions, opaque loose bodies, or bone destruction. (Tr. 504). A few months later, in November 2010, Gopi Prithviraj, M.D., noted Plaintiff continued to smoke, drink alcohol, and "take her medications inappropriately". (Tr. 512).

Plaintiff returned to Dr. Prithviraj in May 2011, complaining of throbbing and aching pain in her right knee, which was somewhat alleviated by the use of an ACE wrap. (Tr. 521). He noted she had an intact range of motion and continued noncompliance with treatment. *Id.*

In September 2011, Plaintiff presented to Divya Venkat, M.D.[1], complaining of worsening bilateral knee pain with "grinding and cracking". (Tr. 516). The record again reveals Plaintiff's history of noncompliance with her medication and treatment due to financial strain. *Id.* On physical examination, Dr. Venkat noted she had no peripheral edema, a good range of motion in her knees bilaterally, and no gross abnormalities. *Id.*

In December 2011, Plaintiff complained of worsening knee pain at a routine follow-up visit. (Tr. 531). Dr. Venkat listed Plaintiff's diagnoses as coronary artery disease, type II diabetes, osteoarthritis, and COPD ("assuming by history"). (Tr. 533). Plaintiff complained of stiffness in her knees, fatigue, and shortness of breath. (Tr. 529).

Plaintiff returned to Dr. Venkat in December 2012, with complaints of pain in her feet and hands. (Tr. 595). At this time Plaintiff was the caregiver for her grandchildren. *Id.* A

---

1. The Commissioner brings to the Court's attention the correct spelling of the doctor's last name—Venkat, not Venkas. (Doc. 18, at 3 n.2).

3

physical examination revealed intact sensation to gross examination in her feet and hands bilaterally, but Dr. Venkat was unable to perform additional testing. (Tr. 596).

Plaintiff presented to the hospital in early May 2013 complaining of coughing and congestion. (Tr. 592). She had poor air exchange bilaterally in her lungs, but no wheezing and no evidence of effusion or consolidation. *Id.* A chest x-ray revealed patchy air space opacities in the right lung base, which were possibly infiltrates. (Tr. 594, 588).

Opinion Evidence

In February 2011, Dr. Prithviraj opined Plaintiff could sit for eight hours in a workday with breaks; stand/walk for one hour nonstop in an 8-hour workday; lift five pounds occasionally; would need scheduled breaks every three to four hours, but no extra unscheduled breaks; and would need to miss work to attend doctor's appointments once every three months. (Tr. 514-15). He listed Plaintiff's diagnoses as diabetes, coronary artery disease, breast cancer, hypertension, dyslipidemia, and osteoarthritis. (Tr. 514).

On December 7, 2011, Dr. Venkat completed a questionnaire and opined Plaintiff could sit for three to four hours with frequent breaks in an 8-hour workday; stand/walk for one to two hours in an 8-hour workday; occasionally lift five pounds; would need one unscheduled break per hour during an 8-hour workday; and would be limited in a sustained competitive work environment by shortness of breath. (Tr. 529-30).

In July 2013, Dr. Cassandra Kovach completed a physician questionnaire. (Tr. 607). She opined Plaintiff could sit for three to four hours in an 8-hour workday with frequent walking breaks; stand/walk for one to two hours in an 8-hour workday; occasionally lift five pounds; and would require one unscheduled break per hour. (Tr. 607-08).

State Agency Physicians

In August 2010, a state agency doctor opined Plaintiff could occasionally lift up to twenty pounds; frequently lift up to ten pounds; sit and stand with normal breaks for six hours in an 8-hour workday; push and pull without limitation; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to cold and heat; had no limitations with regard to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, etc.; and should avoid all exposure to hazards. (Tr. 106-08). On reconsideration, a second state agency physician concurred. (Tr. 126-28).

Consultative Examinations

Franklin Krause, M.D., examined Plaintiff in August 2010. (Tr. 502). He noted Plaintiff had a modest left limp favoring her left knee when she first stood, but her gait was otherwise unremarkable and she was not using any ambulatory aids. (Tr. 503). Dr. Krause stated her air entry was minimally diminished. *Id.* He diagnosed her with arteriosclerotic heart disease; type II diabetes without obvious retinopathy/peripheral neuropathy; a history of breast cancer without recurrence; a history of carpal tunnel syndrome with well-preserved hand function without sensory loss or atrophy; a history of periodic dyspnea; and a history of knee pain with stable gait, and minimal x-ray changes. *Id.* Dr. Krause did not render an opinion on Plaintiff's functional limitations.

In February 2012, Julian Freeman, M.D., completed a medical source statement. (Tr. 548). Dr. Freeman opined Plaintiff could lift and carry up to ten pounds frequently and eleven to twenty pounds occasionally; sit for eight hours and stand for three hours at one time without interruption; walk for one hour at time without interruption; but could sit, stand, and walk for

5

eight hours a day in an 8-hour workday; frequently operate foot controls; and frequently balance, stoop, kneel, crouch, crawl, climb stairs, ramps, and ladders or scaffolds. (Tr. 548-51). Dr. Freeman noted Plaintiff did not require a cane to ambulate. (Tr. 549).

Plaintiff presented to Adi A. Gerblich, M.D., in May 2013 for a consultative examination. (Tr. 564). He noted she dressed herself, cooked by herself, and shopped with friends once or twice a week. (Tr. 565). Upon physical examination, Dr. Gerblich noted Plaintiff's morbid obesity; good chest sounds bilaterally; her chest was clear to percussion and auscultation; no wheezing or rhonchi; adequate upper and lower body muscle powers; normal hand grasp and manipulation; normal range of motion in all examined joints; and a slow and slightly wobbly gait, but no limp. *Id.* A pulmonary function test revealed severe restrictive ventilatory defect and moderate post bronchodilator administration restriction. *Id.* Dr. Gerblich's impression included diabetes, hypertension, obesity stage II, neuropathy, myocardial infarction, stent placement, chronic obstructive lung disease, breast carcinoma, mastectomy, GERD, and osteoarthritis. (Tr. 566).

Dr. Gerblich completed a medical source statement and noted he "was concerned that the claimant overstates her limitations." (Tr. 571). He opined she could frequently lift and carry up to ten pounds; occasionally lift and carry eleven to twenty pounds; sit for thirty minutes, stand for fifteen minutes, and walk for ten minutes at one time without interruption; sit for six hours, and stand and walk for one hour in an 8-hour workday. *Id.* He also noted that while Plaintiff used a cane to ambulate, one was not necessary. (Tr. 572). Even though Plaintiff had complained of carpal tunnel, Dr. Gerblich noted she had no Tinnel sign and opined she could frequently use both hands for reaching, handling, fingering, feeling, pushing, and pulling; and frequently use both feet for operation of foot controls. (Tr. 573). She could occasionally climb stairs and ramps;

6

and never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (Tr. 574). He further opined she could not travel without a companion for assistance and could not use standard public transportation. (Tr. 576). The ALJ assigned "less weight" to this opinion. (Tr. 21).

Dr. Gerblich referred Plaintiff for an echocardiogram which revealed mild mitral regurgitation, mild tricuspid regurgitation, and stage I diastolic dysfunction of the left ventricle. (Tr. 590).

Remand ALJ Hearing

Plaintiff, represented by counsel, and a VE testified at the remand hearing on August 5, 2013. (Tr. 30-70). Plaintiff had past relevant work experience as an office cleaner and stopped working in 2008, but babysat sporadically in 2011. (Tr. 42-44, 61-62). She estimated that her symptoms first began at the beginning of 2010. (Tr. 48-49). Plaintiff began experiencing difficulty walking long distances in 2010 or 2011 due to pain in her knees and feet. (Tr. 45). She stated she did not have a problem standing, but later stated she could not stand without holding onto something. (45-46). Starting in 2010, she used a cane when she left her home. (Tr. 45-46). She experienced "cracking and grinding" in her knees and tenderness ankles and feet. (Tr. 47).

She started experiencing breathing difficulties in 2005 or 2006, but admitted she still smoked. (Tr. 51-52). She had shortness of breath while walking and lifting things. (Tr. 53). She estimated she could only lift five or seven pounds due to carpal tunnel in her hands. *Id.* Plaintiff had to lie down a couple days a week due to depression. (Tr. 55). She cooked, washed dishes, and stated she could also likely sweep, vacuum and do laundry. *Id.* She could spend one hour at a time performing chores as long as she was not standing. (Tr. 56).

7

A VE also testified at the hearing. (Tr. 63). He opined Plaintiff's past work consisted of unskilled, medium exertional level, but that she performed it at a light level. *Id.* In response to the ALJ's first three hypothetical questions, which limited the individual to light work activity, the VE opined the cleaner job, as performed by Plaintiff, could still be performed. (Tr. 63-65). The fourth hypothetical question involved an individual limited to sedentary work, and the VE testified the past work would be precluded, but there were other jobs the individual could perform. (Tr. 67).

ALJ Decision

On September 13, 2013, the ALJ issued a partially favorable notice of decision and made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2013.
2. The claimant had not engaged in substantial gainful activity since the alleged onset date.
3. Since the alleged onset date of disability, March 6, 2008, the claimant had the following severe impairments: diabetes, atherosclerotic heart disease, obesity, osteoarthritis of the knees, and hypertension. Beginning on the established onset date of disability, May 29, 2013, the claimant had and additional severe impairment of COPD.
4. Since the alleged onset date of disability, March 6, 2008, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
5. Prior to May 29, 2013, the claimant had the residual functional capacity ("RFC") to perform light work, meaning she could frequently lift and carry up to ten pounds; occasionally lift and carry eleven to twenty pounds; stand for up to three hours at one time without interruption for a total of eight hours in an 8-hour workday; walk for one hour at a time without interruption for a maximum of eight hours in an 8-hour workday; sit for eight hours at a time without interruption in an 8-hour workday; could use her feet frequently; postural are all frequent; could never be exposed to unprotected heights; and could tolerate up to one-third to two-thirds of the time exposure to extreme cold, heat, and vibrations.
6. Beginning on May 29, 2013, the claimant had the RFC to perform sedentary work, with the following limitations: stand/walk for one hour nonstop; have a

       break every three hours for fifteen minutes; and would miss work once every three months for doctor's appointments.
7. Prior to May 29, 2013, the claimant was capable of performing past relevant work as a cleaner because that work did not require the performance of work-related activities precluded by the claimant's RFC.
8. Beginning on May 29, 2013, the claimant's sedentary RFC prevented the claimant from being able to perform her light exertional level past relevant work.
9. The claimant was an individual of advanced age on May 29, 2013, the established disability onset date.
10. The claimant had at least a high school education and was able to communicate in English.
11. Transferability of job skills was not an issue in this case because the claimant's past relevant work was unskilled.
12. Since May 29, 2013, considering the claimant's age, education, work experience, and RFC, there were no jobs that exited in significant numbers in the national economy which the claimant could have performed.
13. The claimant was not disabled prior to May 29, 2013, but became disabled on that date and has continued to be disabled through the date of this decision.

(Tr. 10-23).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court

9

cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration

requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred by not affording the opinions of treating physicians Dr. Prithviraj and Dr. Venkat controlling weight or providing "good reasons" for not doing so. (Doc. 15, at 11-14).

<u>Treating Physician Rule</u>

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. § 416.927(c)(2).

A treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, she must provide evidentiary support for such a finding and provide "good reasons" for the weight given to the opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers*, 486 F.3d at 242.

Good reasons are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight.'" *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). "These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* This requirement helps a claimant understand the disposition of her case. *Wilson*, 378 F.3d at 544. While an ALJ is required to delineate good reasons, she is not required to enter into an "exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Dr. Venkat

Plaintiff asserts the ALJ erred in assigning only some weight to the opinion of treating physician Dr. Venkat. (Doc. 15, at 13-14).

The ALJ gave Dr. Venkat's opinion less than controlling weight because Plaintiff had a normal ejection fraction, no ischemia, and no neurological problems limiting her ability to stand or walk. (Tr. 20). Additionally, she noted Dr. Venkat listed COPD as a diagnosis, but made that assumption based only on the history provided to him. *Id.* She pointed out Dr. Venkat did not order a pulmonary function test ("PFT") and Plaintiff's lungs were sometimes clear. *Id;* (Tr. 467, 532). Instead, Dr. Venkat managed her symptoms, including shortness of breath, with albuterol. (Tr. 20). The ALJ noted a PFT was not ordered until 2013, so it was difficult for her "to accept the limitation without objective medical evidence to quantify the limitations." *Id.* Therefore, she did not give Plaintiff a more limited RFC until 2013. *Id.* The ALJ concluded by stating that the RFC assessment was supported by the entire record. *Id.*

The ALJ's decision touched on the factors of supportability and consistency. Objective medical evidence reveals Plaintiff's lungs were sometimes clear and she had not sought emergency medical treatment for respiratory problems. (Tr. 467, 532). Also, neither Dr. Venkat, nor any other doctor in the record, ordered a PFT prior to May 2013, so there is no objective medical evidence supporting a debilitating limitation due to COPD prior to this date.

Notably, Plaintiff only points to one piece of objective evidence, the PFT performed in May 2013, when the ALJ found her disabled, to apparently support the contention her COPD and shortness of breath caused severe limitations prior to May 2013. (Doc. 15, at 13-14). This argument is not well-taken. The ALJ delineated sufficient good reasons, supported by substantial evidence in the record, for the less than controlling weight she assigned to Dr. Venkat's opinion.

Dr. Prithviraj

Likewise the ALJ assigned some weight to the opinion of treating physician Dr. Prithviraj. (Tr. 19-20). She provided four specific reasons for giving this opinion less than controlling weight.

First, the ALJ stated the limitation of lifting five pounds occasionally was not consistent with the cardiac status of a normal ejection fraction of 60% and a virtually 99% normal echo test. (Tr. 19). Plaintiff argues this is not a good reason because nothing in the doctor's report indicates he based his limitation solely on Plaintiff's coronary artery disease. (Doc. 15, at 13). Plaintiff, however, offers no objective medical evidence to support any limitation in lifting. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) (finding that the opinion of a treating physician is only entitled to controlling weight if it is well-supported by the objective medical evidence).

A review of the record reveals substantial evidence does support the ALJ's determination that the lifting limitation is inconsistent with and unsupported by the record. At this time, Plaintiff had mostly normal cardiac functioning with an ejection fraction of 65%. (Tr. 467, 469, 470, 497). X-rays of her knees revealed spurring, but preserved joint spaces; and no joint effusions, opaque loose bodies or chondrocalcinosis, or bone destruction. (Tr. 504). There is no objective evidence resulting in a diagnosis of COPD during this time. Also, Plaintiff was not only the caregiver of her grandchildren, but also sporadically looked after multiple other children as well. (Tr. 595, 62).

Second, the ALJ stated Dr. Prithviraj relied on Plaintiff's report of shoulder and knee pain without considering that x-rays did not support such an extensive limitation. (Tr. 19-20). Plaintiff asserts this is not a good reason because pain is subjective and the ALJ should not have rejected Dr. Prithviraj's opinion based his own interpretation of the x-rays. (Doc. 15, at 13).

When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

Here, Plaintiff does not specifically challenge the ALJ's credibility determination and, even so, the ALJ's determination is supported by substantial evidence in the record. X-rays of

Plaintiff's knees revealed spurring, but were otherwise normal and without bone destruction. (Tr. 504). There is no objective evidence or x-rays to substantiate Plaintiff's complaints of shoulder pain (Tr. 514), and hip x-rays revealed only mild osteoarthritis (Tr. 471). Additionally, Plaintiff complained of right knee pain, but frequently had an intact range of motion and no gross abnormalities. (Tr. 516, 521).

Third, the ALJ stated the limitations that Plaintiff could stand for one hour at a time, but lift only five pounds were not consistent with each other. (Tr. 20). Plaintiff asserts this is not a good reason because there is no inconsistency as one limitation involves standing and one involves lifting, but does not elaborate. (Doc. 15, at 13). The Commissioner asserts it is unlikely that an individual limited to lifting only five pounds maximum would have the strength to stand for one hour. (Doc. 18, at 8).

An ALJ's reasoning with regard to a treating physician's opinion weight may be brief, but a single statement asserting inconsistency, without more, is not sufficient to make clear the reasons why the treating physician is accorded little weight. *See Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 651 (6th Cir. 2009); *Friend v. Comm'r of Soc. Sec.* 375 F. App'x 543, 551-52 (6th Cir. 2010). This reason is not well-explained. Even so, this insufficiency is not fatal and is discussed more below. Further, the undersigned does not find any objective medical evidence in the record that would support a more restrictive limitation.

Fourth, the ALJ pointed to Dr. Prithviraj's opinion that Plaintiff would need to take a break every three to four hours, which she asserted was consistent with traditional work hours—suggesting Dr. Prithviraj's "limitation" is really consistent with Plaintiff's ability to work, rather than an inability to work. (Tr. 20). The ALJ added that she presented a similar hypothetical to the VE at the hearing and there were jobs available. *Id.* Plaintiff asserts this is not a good reason

15

either because Dr. Prithviraj "did not assess additional unscheduled breaks, so there is no reason for [the ALJ] to use this as a basis for discrediting his opinion." (Doc. 15, at 13). This does not appear to be the case because Dr. Prithviraj stated Plaintiff would require "no extra unscheduled breaks." (Tr. 515).

While the last two reasons provided by the ALJ are certainly not as clear as the first two, the Sixth Circuit has found harmless error can be established, in limited circumstances, through an indirect attack of a treating physician's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005). In subsequent cases, the Sixth Circuit has made limited use of the indirect attack rule when an ALJ has thoroughly evaluated the record. *See, e.g., Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (holding ALJ adequately addressed opinion by indirectly attacking both its consistency and supportability with other record evidence); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (to satisfy an indirect attack, the ALJ must identify objective clinical findings at issue or discuss their inconsistency with the doctor's opinion.).

Here, although the ALJ delineated only limited, and at times confusing, reasons for providing less than controlling weight to the treating physicians' opinions in portions of the decision in which she mentions them by name—she thoroughly evaluated the entire record and cited to substantial objective medical evidence showing inconsistency in the opinions. *See Daily v. Colvin*, 2014 U.S. Dist. LEXIS 82267, at *19 (N.D. Ohio) (the Court may consider whether the ALJ's opinion taken as a whole, "thoroughly evaluates the evidence and indicates the weight the ALJ gave it.") (citing *Nelson*, 195 F. App'x at 470-71).

Specifically, the ALJ addressed each of Plaintiff's severe impairments and cited to evidence in the record supporting her determination that Plaintiff could perform light work prior

to May 29, 2013. (Tr. 17-18). The ALJ noted that while Plaintiff had the severe impairment of diabetes, she did not check her blood glucose or take her medication regularly. *Id.* Although she had the severe impairment of atherosclerotic heart disease, she had a normal stress test, normal electrocardiogram, and an echo revealed only some diastolic dysfunction. *Id.* Also, she had the severe impairment of obesity, but did not use an ambulatory aid in 2010 and only began using one on-and-off in the past few years. *Id.* Plaintiff had the severe impairment of osteoarthritis in her knees, but she stated she did not treat for this condition except through the occasional use of an ACE bandage and cane. *Id.* Finally, the severe impairment of hypertension was well-controlled by medication. *Id.*

The ALJ thoroughly addressed additional opinion evidence in the record as well. (Tr. 19, 21). She evaluated certain medical records which the Appeals Council specifically directed on remand and spoke to Plaintiff's credibility. (Tr. 18). Those records reveal Plaintiff continued to smoke cigarettes, drink alcohol, and not take her medication as directed. (Tr. 18, 512). They also note Plaintiff was unable to find work due to knee pain, a fact she denied at the hearing. (Tr. 18, 61-62, 516). These records show her lungs were sometimes clear and sometimes she had "occasional wheezing". (Tr. 18, 512, 516). During this time, she was on a medication assistance program and her lipids were "at goal". (Tr. 18, 522). Records from Euclid Hospital revealed abnormal liver function tests despite Plaintiff's denial of alcohol abuse. (Tr. 18, 482).

The ALJ also discussed Plaintiff's ability to perform activities of daily living including the ability to live on the second floor, perform self-care tasks, cook, and clean. (Tr. 19, 502-03).

Overall, the ALJ's reasoning speaks to the consistency and supportability of the record. While the last two reasons she provided for discrediting the opinion of Dr. Prithviraj certainly are not as well-explained as the first two; the reasons provided throughout her decision are sufficient

17

to explain the less than controlling weight assigned to the treating physicians' opinions. The ALJ appropriately concluded that Plaintiff's additional severe impairment of COPD, confirmed by objective medical tests, rendered her disabled as of May 29, 2013. (Tr. 20).

## CONCLUSION

Following a review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision is supported by substantial evidence and resulted from application of the correct legal standards. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

 s/James R. Knepp II  
United States Magistrate Judge